Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| Helvia Irizarry Quintero<br><br>Apelante<br><br>vs.<br><br>Prerac, Inc. D/B/A Enterprise Rent-A-Car<br><br>Apelado<br><br>Mario Román Herrero, su esposa Laura Class, y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Compañía de Seguros ABC<br><br>Terceros Demandados | TA2025AP00560 | **APELACIÓN**<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2021CVO5240 (508)<br><br>Sobre:<br><br>Cobro de Dinero, Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de diciembre de 2025.

Comparece la señora Helvia Irizarry Quintero (Sra. Irizarry Quintero o parte apelante), quien nos solicita la revisión de la Sentencia Parcial emitida el 15 de octubre de 2025[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario). Mediante el referido dictamen, el foro primario declaró Ha Lugar la solicitud de sentencia sumaria presentada por PRERAC Inc. (PRERAC o parte apelada) y, en consecuencia, desestimó la reclamación en cobro de dinero, y daños y perjuicios, instada por la parte apelante.

Examinada la solicitud de autos, la totalidad del expediente y el derecho aplicable, revocamos la Sentencia apelada en lo

---

[1] Notificada al día siguiente.

concerniente a la desestimación de la reclamación sobre cobro de dinero. No obstante, confirmamos el dictamen impugnado en cuanto a la desestimación de la causa de acción en torno al reclamo en daños y perjuicios, por los fundamentos que expondremos a continuación.

## I.

El 16 de agosto de 2021, la Sra. Irizarry Quintero instó una Demanda sobre cobro de dinero en contra de PRERAC. En síntesis, alegó que pactó un acuerdo de compraventa con el señor Mario Román Herrero (Sr. Román Herrero). Según su postura, ambos acordaron que, la parte apelante le entregaría la suma de $13,000.00 y su vehículo de motor Nissan a cambio de un Toyota Corolla (2012). Aseveró que, emitió un cheque de $13,000.00 a nombre de PRERAC por motivos del negocio jurídico. Precisó que dicho cheque fue depositado y cobrado a la cuenta de la parte apelada. No obstante, arguyó que, tras adquirir el vehículo de motor, notó que no cumplía con las especificaciones acordadas. En vista de ello, la apelante peticionó el pago de $14,827.32 en concepto de cobro de dinero, intereses legales, costas y honorarios de abogado.

Con posterioridad, 16 de junio de 2022, la Sra. Irizarry Quintero incoó una Demanda Enmendada a los efectos de incluir una causa de acción sobre daños y perjuicios. En lo pertinente, contextualizó que advino en conocimiento el 2 de junio de 2022 de una investigación interna efectuada por PRERAC:

> *26. No obstante, lo anterior, el **26 de mayo de 2022,** restando 2 días laborables para que venciera el término de descubrimiento de prueba, la parte demandada envió correo electrónico con una declaración jurada con el resultado de una investigación interna de PRERAC, Inc. sobre lo ocurrido, e informando que se reiteraba en las defensas levantadas en la contestación a la demanda y presentaría una moción dispositiva.*
>
> *27. La parte demandante advino en conocimiento de dicha **comunicación el 2 de junio de 2022,** pues se*

*había recibido en el archivo de "spam" del correo electrónico, el cual no se revisa regularmente y así se informó de inmediato a la parte demandada.*

*28. Al conocer de dicha comunicación, la demandante se percató de que la demandada nunca tuvo la intención real de celebrar conversaciones transaccionales para llegar a un acuerdo y esperó hasta el final del término de descubrimiento de prueba para revelarlo, privando así a la demandante de valioso tiempo para realizar descubrimiento de prueba y agilizar el caso.[2]* (Énfasis nuestro).

A la luz de lo anterior, manifestó que PRERAC no tiene intención de celebrar conversaciones transaccionales. Por ello, adujo que se siente timada y víctima de apropiación ilegal por dicha parte. Agregó que, el 4 de septiembre de 2018 le cursó una carta a la parte apelada para comunicar la situación presente, pero subrayó que PRERAC nunca ha tenido la intención de asumir su responsabilidad. Señaló que tal conducta le ha causado graves daños emocionales y angustias mentales que se estiman en una suma no menor de $15,000.00.

Ante tales alegaciones, el 5 de agosto de 2022, PRERAC presentó su Contestación a Demanda Enmendada y Reconvención. En esencia, precisó que no vende vehículos usados a personas particulares, sino a concesionarios debidamente autorizados. Asimismo, argumentó que el Sr. Román Herrero es parte indispensable en este caso, toda vez que fue la persona que celebró el negocio jurídico referente al automóvil con la Sra. Irizarry Quintero.

Luego de una serie de incidencias procesales, el 18 de octubre de 2024, la parte apelada radicó una Demanda Contra Tercero, es decir, el Sr. Román Herrero, la Sra. Laura Class, y la Sociedad Legal de Bienes Gananciales constituida por ambos. En síntesis, indicó que el tercero demandado celebró una transacción en representación de PRERAC. Sin embargo, puntualizó que no ha

---

[2] Véase, Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC TPI), Entrada 23, a la pág. 3.

existido ningún vínculo entre el concesionario apelado y el Sr Herrero Román. Por consiguiente, sostuvo que el tercero demandado es quien debe responderle a la parte apelante.

Posteriormente, el 26 de junio de 2023, la parte apelada presentó una Solicitud de Sentencia Sumaria a la cual adjuntó una serie de documentos. Arguyó que, la causa de acción en daños y perjuicios está prescrita, toda vez que, desde el mes de febrero de 2013, la apelante conocía sobre el daño objeto de la reclamación. No obstante, expresó que la Sra. Quintero Irizarry se rehusó a tomar una acción inmediata para detener el cobro del cheque, así como para exigir el pago de los $13,000.00 al Sr. Román Herrero. Resaltó que su inercia complicó la tramitación de este pleito y ha forzado a la parte apelada a defenderse de un evento ocurrido en el 2013, en el cual no tuvo participación alguna. Por lo anterior, señaló que no existen hechos en controversias al respecto, que impidan dictar sentencia sumaria a su favor.

Por su parte, el 18 de agosto de 2023, la Sra. Irizarry Quintero sometió su Oposición a la Sentencia Sumaria a la cual adjuntó los fragmentos de una deposición y la copia de un correo electrónico cursado por la representación legal de PRERAC. En suma, arguyó que no existe controversia respecto a que la apelante emitió un pago por error a la parte apelada, como resultado de la compraventa del automóvil.

El 1 de septiembre de 2023, PRERAC presentó una Réplica a Oposición de Sentencia Sumaria Enmendada, en la cual reiteró que, la Sra. Irizarry Quintero voluntariamente participó de las negociaciones en torno a la compraventa del vehículo de motor con el Sr. Román Herrero. Especificó que, a la luz de tales hechos, efectuó el pago al tercero demandado. Por consiguiente, argumentó que no medió la figura de error de pago.

En respuesta, el 4 de octubre de 2023, la apelante interpuso una Breve Dúplica sobre Sentencia Sumaria, en la cual añadió, entre otros extremos, que la parte apelada intenta de justificar su incumplimiento con el hecho de que el vendedor es un tercero demandado.

Examinadas las posturas de las partes, el 15 de octubre de 2025, el foro primario emitió una Sentencia Parcial[3], mediante la cual declaró Ha Lugar la solicitud de sentencia sumaria, y desestimó con perjuicio la reclamación en daños y perjuicios y cobro de dinero instada en contra PRERAC. En lo pertinente, formuló las siguientes determinaciones de hechos esenciales incontrovertidos:

> *1. La demandante es soltera, mayor de edad, y residente de San Juan.*
>
> *2. La demandante y su padre conocen al Sr. Román Herrero hace alrededor de 30 años pues Román es vecino de sus padres.*
>
> *3. Para el 2013, Román era vendedor de autos usados independiente y cobraba comisiones por referir compradores a los concesionarios (dealers) de ventas de vehículos de motor.*
>
> *4. En febrero de 2013, la demandante y/o su padre le expresaron a Román sobre el interés de adquirir un vehículo, preferiblemente Toyota, y este le indicó que investigaría para darles opciones.*
>
> *5. Román le ofreció a la demandante y/o a su padre un Toyota Corolla de 2012 a cambio de su carro Nissan Altima del 2006, más un pago de $13,000.00.*
>
> *6. Según Román, el Toyota Corolla que obtuvo para la demandante le pertenecía al concesionario (dealer) de vehículos de motor Auto Mart de Ponce, dedicado a la venta de vehículos de motor usados; no le pertenecía a PRERAC.*
>
> *7. Román le informó que el Toyota Corolla estaba valorado en $19,000.00.*
>
> *8. Román le ofreció a la demandante y/o a su padre $6,000 por el Nissan Altima del 2006 de la demandante.*

---

[3] Notificada al día siguiente.

*9. Cuando comenzaron la transacción, Román no tenía el carro disponible. Él ofreció llevar el carro a casa de los padres de la demandante.*

*10. A principios del mes de febrero del 2013, Román le entregó a la demandante y/o su padre la posesión del auto Toyota Corolla, en la casa de sus padres. Se estima que fue un viernes 8 de febrero de 2013; la demandante y Román no recuerdan la fecha exacta*

*11. La entrega del Toyota Corolla por parte de Román a la demandante y/o a su padre se llevó a cabo en la Calle Diana, Urb. Dos Pinos, San Juan en donde residen los padres de la demandante y Román.*

*12. El mismo día de la entrega del Toyota Corolla a la demandante y/o a su padre y en el mismo lugar (residencia de los padres de la demandante), estos le entregaron a Román la posesión del Nissan Altima.*

*13. La transacción que se relata en la Demanda entre Román y la demandante y/o su padre no se llevó a cabo en las facilidades de PRERAC, ni en un concesionario o dealer de carros usados.*

*14. El mismo día que llevaron a cabo la transacción de entregarse el Toyota Corolla y el Nissan Altima, la demandante y/o su padre le entregaron a Román el Cheque a la orden de PRERAC, Inc., por la cantidad de $13,000.00, con fecha de 7 de febrero de 2013, e identificado con el Número 103104000022792.*

*15. Román fue quien le instruyó a la demandante y/o su padre a entregar el Cheque a la orden de PRERAC, Inc. por la cantidad de $13,000.00.*

*16. Del Cheque no surge ninguna restricción, especificación, observación ni comentarios.*

*17. En el Cheque no consta lenguaje alguno que describa la razón y propósito del pago.*

*18. Toda comunicación sobre el negocio relativo a la compraventa del Toyota Corolla se llevó a cabo entre la demandante y/o el padre de la demandante, Román y el concesionario (dealer) de autos, Auto Mart de Ponce.*
*19. La demandante no tenía conocimiento sobre quien era el patrono de Román.*

*20. La demandante entendía que Román era vendedor de un concesionario o dealer, pero nunca le preguntó a Román el nombre del concesionario o dealer.*

*21. A pesar de conocerlo pues era y es vecino de sus padres, la demandante admitió que infirió que Román vendía carros y trabajaba para PRERAC cuando éste le requirió a ella que hiciera el Cheque por la cantidad de $13,000.00 a la orden de PRERAC, Inc.*

*22. La demandante admite que Román nunca le dijo que el dealer al cual él se refería durante la negociación era*

*PRERAC, sino que Román hablaba del dealer sin proveer un nombre específico.*

*23. Hasta la fecha de la toma de su deposición, la demandante entendía que PRERAC, Inc. era un concesionario o dealer dedicado a la venta de vehículos de motor-*

*24. PRERAC única y exclusivamente entra en transacciones con dealers o concesionarios autorizados en lo que respecta a la disposición de sus vehículos decomisados de la flota, y no hace transacciones con personas particulares.*

*25. PRERAC no intercambia vehículos decomisados de su flota por vehículos de más antigüedad (trade-in).*

*26. PRERAC no adquiere vehículos usados como parte de su operación de alquiler de vehículos.*

*27. La demandante no recuerda que Román le haya dicho alguna vez que era empleado de PRERAC.*

*28. Román nunca fue ni ha sido empleado, representante, contratista independiente y/o ha laborado para PRERAC.*

*29. Román nunca ha llevado a cabo negocios con PRERAC ni ha tenido relación alguna con PRERAC.*

*30. Al momento de entregarse mutuamente la posesión de los autos marca Toyota Corolla y Nissan Altima, Román y la demandante y/o su padre no se entregaron documento alguno que evidenciara el traspaso de las unidades ni la transacción efectuada.*

*31. No se generó documento de traspaso de la titularidad de las unidades.*

*32. No se generó ni entregó ningún documento que demostrara la titularidad de las unidades.*

*33. No se firmó un acuerdo o contrato de compraventa del vehículo de motor.*

*34. Román tampoco entregó una Orden de Compra o recibo a la demandante y/o a su padre.*

*35. Tampoco se le entregó a la demandante y/o a su padre un recibo de entrega del Cheque.*

*36. En ningún momento se le entregó a la demandante y/o a su padre un documento generado por PRERAC.*

*37. La demandante nunca habló con un empleado o algún representante de PRERAC, ni fue a las facilidades de PRERAC.*

*38. La demandante infirió que el Toyota Corolla era propiedad de PRERAC porque hizo el cheque a nombre de PRERAC, Inc.*

39. *Nadie le dijo a la demandante que el Toyota Corolla le pertenecía a PRERAC.*

40. *Román le entregó el Cheque de $13,000 a Auto Mart de Ponce.*

41. *Al momento de la entrega del Toyota Corolla, la demandante no le expresó a Román reparo alguno con la unidad.*

42. *Según la demandante, al día siguiente de que Román le entregó el Toyota Corolla, por no sentirse cómoda con la unidad, acudió a Agustín Lugo, un concesionario de vehículos de motor, a averiguar los precios de ese tipo de vehículo. Luego de que la demandante le explicó a un empleado el acuerdo que suscribió con Román, el empleado le insinuó que la "habían cogido de boba" mediante esa transacción. No contactó a Román previo a ir a Agustín Lugo porque se sentía "incómoda" y no se "atrevía."*

43. *Luego de ir al concesionario de autos Agustín Lugo, la demandante y/o su padre contactaron a Román y le indicaron que no querían el Toyota Corolla y le solicitaron la devolución del Nissan Altima y los $13,000.*

44. *La demandante y/o su padre le devolvieron el carro Toyota Corolla a Román.*

45. *Román devolvió el auto Nissan Altima a la demandante y/o a su padre.*

46. *Román no le devolvió el Cheque de $13,000 a la demandante y/o a su padre.*

47. *Román le indicó a la demandante y/o a su padre que él no tenía el dinero sino el "dealer" y que tenía que hablar con el "dealer" porque ellos tomaban la decisión si devolvían el dinero o no.*

48. *Tras recibir esta información, ni la demandante ni su padre hicieron gestiones directamente con PRERAC, Inc. para desautorizar y/o anular el Cheque a través de PRERAC.*

49. *La demandante nunca intentó comunicarse con PRERAC o acudió a PRERAC para atender la situación del Cheque, o decirles lo que ocurrió con Román.*

50. *Según la demandante, nunca intentó comunicarse con PRERAC sobre la situación debido a la "relación de vecinos" que tenían con Román.*

51. *La demandante no investigó a qué negocio se dedica o qué es PRERAC, más allá de una búsqueda inicial en la cual encontró que "tenía que ver algo con carros".*

52. *En o para el 13 de febrero de 2013, JMO Auto Group Inc. d/b/a Ticket Auto ("JMO Auto Group") le entregó a*

*PRERAC, Inc., el cheque en pago de una deuda existente de JMO con PRERAC.*

*53. JMO Auto Group era un concesionario (dealer) autorizado a quien PRERAC le vendió vehículos usados, decomisados de su flota.*

*54. PRERAC aceptó el Cheque, como pago de una deuda existente de JMO Auto Group, con quien hizo negocios, no tenía forma de conocer que había un problema con el mismo.*

*55. El 13 de febrero de 2013, el Cheque fue depositado en la cuenta de PRERAC, Inc. con Banco Popular, número 030405149.*

*56. El 13 de febrero de 2013, el Banco Popular procesó el Cheque y depositó el importe en su cuenta.*

*57. Tras el depósito del Cheque en la cuenta de PRERAC, ésta no recibió ninguna objeción o queja de parte de la demandante.*
*58. Tras el depósito del Cheque, Banco Popular no le informó a PRERAC sobre alguna solicitud para suspender el pago del Cheque.*

*59. Según la demandante, en alguna fecha posterior al 13 de febrero de 2013 (fecha en que se procesó el importe del Cheque), intentó darle un stop payment al Cheque, pero no cuenta con evidencia de tal gestión.*

*60. La demandante admite que no inició una investigación en Banco Popular en torno al cheque "porque no lo entend[ió] necesario", a pesar de reconocer que le entregó a Román el Cheque de $13,000.*

*61. La demandante solicitó la devolución del dinero a Román mediante llamadas telefónicas y textos, de los cuales no recuerda fechas, ni las tiene disponible porque cambió de teléfono.*

*62. La única comunicación que conserva la demandante dirigida a Román es un mensaje de texto enviado por su pareja, el Sr. Alex Villegas, a través de WhatsApp, el 15 de marzo de 2019, como último intento de resolver la situación entre ellos y sin tener que recurrir a recursos externos. Entre las alternativas ofrecidas a Román, fue un plan de pago mensual de $100.00.*

*63. Román le devolvió $400.00 a la demandante y/o a su padre, en efectivo.*

*64. Según Román, los $400.00 que le devolvió a la demandante y/o su padre fueron la cuantía de la comisión que le pagó Auto Mart de Ponce por la venta del Toyota Corolla, los cuales le devolvió a la demandante y/o su padre debido a su relación personal con el padre de la demandante.*

65. *Román nunca le solicitó a PRERAC la devolución del cheque de $13,000.65.*

66. *Debido a la transacción sobre el Toyota Corolla, la relación de la demandante y de sus padres con Román, persona en quien la demandante confiaba, se lesionó.*

67. *La demandante se siente engañada por Román desde que fue al concesionario de vehículos Agustín Lugo, en o alrededor del 9 de febrero de 2013, y le indicaron cual era el precio en el mercado de un Toyota Corolla de 2012.*

68. *Transcurridos más de cinco (5) años desde que le entregó el Cheque a Román, luego que Román dejara de contestarle mensajes y llamadas, la demandante acudió a las oficinas del Lcdo. Harry Olivero Llorens, para solicitar orientación y representación.*

69. *El Lic. Olivero le remitió a PRERAC, Inc. una carta con fecha de 4 de septiembre de 2018, aduciendo, entre otras cosas, que: (1) aparentemente, Román era representante de PRERAC, Inc.; (2) Román llegó a un acuerdo verbal con la demandante en la que él le entregaría un Toyota Corolla, a cambio de que ella le entregara su carro Nissan Altima y $13,000.00 dólares; (4) la demandante entregó, personalmente, a Román un cheque por la cantidad de $13,000.00 el cual fue cobrado por PRERAC, Inc.; (5) a pesar de que ella devolvió el carro Toyota Corolla, Román no devolvió la totalidad del dinero entregado; (6) a la fecha de la carta, Román había devuelto a la demandante la cantidad de $400.00; (7) por tanto, solicitó la devolución de la cantidad de $12,600.00 dólares tanto a PRERAC, Inc.*

70. *La carta preparada y cursada por el Lcdo. Olivero, en representación de la demandante, fue la primera comunicación de la demandante con PRERAC.*

71. *PRERAC, a través de su representante legal, le notificó al Lic. Olivero una misiva el 30 de octubre de 2018, en la que certificó que no tenía ni nunca había tenido un empleado o agente de nombre Mario Román Herrero, por lo que éste no podía representarlos en capacidad alguna. Así también certificó que PRERAC, Inc. no vende vehículos decomisados de su flota a personas particulares o a individuos, directa ni indirectamente por lo que era esencial que se le proveyera más detalles de la unidad para identificar si el carro- al que se hacía referencia en la carta- había pertenecido en algún momento a PRERAC, Inc. y poder a su vez identificar a que concesionario de autos usados se le pudo haber vendido para identificar al patrono de Román.*

72. *La demandante no ha presentado una reclamación civil ni criminal contra Román, su esposa Laura Class, ni la Sociedad Legal de Bienes Gananciales compuesta por ellos porque Román era amigo de sus padres.*

*73. La demandante no conoce información alguna sobre el Toyota Corolla, es decir, tablilla o número de identificación, o cuenta prueba documental adicional a la anejada a la Demanda y al texto que acompañó a la Contestación al Primer Pliego de Interrogatorios y Requerimiento de Producción de Documentos.*

*74. La demandante desconoce qué es JMO Auto, si PRERAC hacia negocios con JMO Auto o si JMO tenía una deuda con PRERAC para la fecha de los hechos de este caso.*

*75. La demandante desconoce qué ocurrió con el Toyota Corolla después de que se lo devolvió a Román.*

*76. Román admite que el concesionario que le proveyó el Toyota Corolla para vendérselo a la demandante y/o su padre y quien recibió el pago por la compraventa y se benefició económicamente de ésta fue Auto Mart de Ponce.*

*77. Auto Mart de Ponce y JMO Auto eran concesionarios (dealers) autorizados a quien PRERAC le vendió vehículos usados, decomisados de su flota.*

*78. Tanto JMO Auto Group como Auto Mart de Ponce, Inc. cesaron operaciones el 16 de octubre de 2015 y 31 de diciembre de 2021, respectivamente.*

*79. PRERAC desconoce la naturaleza de la relación, si alguna, entre JMO Auto Group y Auto Mart de Ponce, aparte de que según surge de los récords del Departamento de Estado, ambas entidades operaban en el área sur de Puerto Rico, y sus agentes residentes residían en Ponce.*

*80. Una vez un vehículo de la flota de vehículos decomisados es adquirido por un concesionario o dealer de PRERAC, PRERAC no tiene control o titularidad sobre dicho vehículo.*[4]

A la luz de lo anterior, el TPI resolvió que, en el mes de febrero de 2013, la parte apelante contactó al Sr. Román Herrero, vendedor independiente, para comprar un vehículo de motor marca Toyota Corolla (2012), preferiblemente nuevo. Así las cosas, concluyó que este último le remitió el cheque de la compraventa del automóvil al *dealer* Auto Mart de Ponce (Auto Mart), y no a PRERAC. Ante tales circunstancias, precisó que la parte apelada no adeuda la cantidad objeto del litigio, pues la prueba presentada estableció que Auto Mart fue el concesionario que se benefició del

---

[4] Véase, SUMAC del TPI, Entrada 132, a las págs. 3-12.

pago.  Por otro lado, determinó que PRERAC recibió el cheque como resultado de una deuda contraída con JMO Auto Group.  Por consiguiente, dispuso que la denegatoria de restituir el dinero no generó un daño, según prescribe nuestro ordenamiento civil.

Inconforme, el 17 de noviembre de 2025, la Sra. Irizarry Quintero recurrió ante nos mediante un escrito intitulado Apelación Civil, en el cual esbozó el siguiente señalamiento de error:

> *Erró el Honorable Tribunal de Primera Instancia al desestimar la demanda de la apelante y no resolver que hubo un cobro de lo indebido que da derecho a restitución y al resarcimiento por daños y perjuicios.*

El 18 de noviembre de 2025, emitimos una Resolución en la cual concedimos a la parte apelada un término a vencer el 10 de diciembre de 2025 para presentar su alegato en oposición. En cumplimiento, PRERAC presentó su Alegato en Oposición a Apelación Civil.  Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

## II.

## A.

Es norma reiterada que, la sentencia sumaria es la herramienta procesal que procura la solución rápida, justa y económica de aquellos casos en los que no existen hechos materiales en controversia que ameriten la celebración de un juicio. *Soto y otros v. Sky Caterers,* 2025 TSPR 3, 215 DPR ___ (2025); *Oriental Bank v. Caballero García,* 212 DPR 678 (2023).  A tales fines, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite la presentación de una moción de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes.  *Oriental Bank v. Perapi et al.,* 192

DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Cónsono con lo anterior, la Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, instaura los requisitos de forma respecto a esta moción y su oposición. Véase, además, *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 472 (2023). En particular, el inciso (a) de la precitada disposición reglamentaria establece las siguientes formalidades que debe exhibir la solicitud de sentencia sumaria:

> *(1) Una exposición breve de las alegaciones de las partes;*
>
> *(2) los asuntos litigiosos o en controversia;*
>
> (3) *la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;*
>
> (4) *una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;*
>
> (5) *las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y*
>
> (6) *el remedio que debe ser concedido.* 32 LPRA Ap. V, R. 36. 3(a).

Por su parte, quien presente el escrito de oposición a la sentencia sumaria también tiene que cumplir con los requisitos de la Regla 36.3(b) y (c) de Procedimiento Civil, *supra. Oriental Bank v. Caballero García, supra*, a la pág. 680. Así que, no podrá descansar solamente en aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar de forma específica. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. 32 LPRA Ap. V, R. 36.3(c). Por ello, no debe asumir una actitud pasiva ni descansar en las aseveraciones o las

negaciones. *Oriental Bank v. Caballero García, supra,* a la pág. 680; *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 677 (2018).

Una vez se presente la solicitud de sentencia sumaria y su respectiva oposición conforme a los requisitos discutidos, el foro primario deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. *Consejo Tit. v. Rocca Dev. Corp. et als.,* 25 TSPR 6, 215 DPR __ (2025); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 933 (2010). En cuanto a los documentos presentados, "éstos deben verse de la forma más favorable para la parte promovida, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos". *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 735 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

Ahora bien, la concesión de este mecanismo procesal no es automática. La parte opositora puede derrotar tal solicitud si presenta un escrito que establezca la existencia de hechos esenciales en controversia:

> *En la oposición a una solicitud de sentencia sumaria, el promovido debe, como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte una sentencia sumaria en su contra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición según exige la Regla 36.3. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020); *Roldán Flores v. M. Cuebas et al., supra,* a la pág. 677.[5]

---

[5] **Según la jurisprudencia, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable**. *Oriental Bank v. Caballero García, supra,* a la pág. 679.

No obstante, como regla general, no es aconsejable dictar sentencia sumaria si hay asuntos de credibilidad que ameritan la celebración de un juicio. A tales efectos, el Tribunal Supremo de Puerto Rico ha validado la aplicación de este mecanismo siempre y cuando no existan controversias esenciales sobre hechos materiales:

> [N]o es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa. Soto v. Hotel Caribe Hilton, 137 DPR 294 (1994). Sin embargo, esto no impide utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención —como pasa en un caso de discrimen— cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales. Ramos Pérez v. Univisión, 178 DPR 200, 219 (2010).

Efectuado ese análisis, el tribunal podrá dictar sentencia sumaria "si queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que es innecesaria una vista en los méritos". *Birriel Colón v. Econo y otro*, 213 DPR 80, 91 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 337 (2021). En efecto, la concesión de este recurso procede si de la prueba que acompaña a la moción surge preponderantemente la inexistencia de controversia sobre hechos medulares. *CSM v. ELA*, 2025 TSPR 78, 216 DPR ___ (2025); *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024). Es decir, el foro primario deberá dictar sentencia sumaria cuando ante los hechos materiales no controvertidos: (1) el promovido no puede prevalecer frente al derecho aplicable, y (2) el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Oriental Bank v. Caballero García, supra*, a la pág. 679; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012). No obstante, si el foro primario identifica hechos esenciales en controversia le corresponderá denegar la solicitud de sentencia

sumaria y establecer aquellos hechos controvertidos e incontrovertidos, según exige la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4.

Por último, si una parte está inconforme con el dictamen relacionado con la solicitud sentencia sumaria tiene derecho a recurrir a la etapa apelativa. En tales circunstancias, nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. *Cruz, López v. Casa Bella y otros, supra,* a la pág. 994; *Birriel Colón v. Econo y otro, supra,* a la pág. 91. Así que, ostentamos la facultad de examinar *de novo* el expediente y aplicar los criterios que exigen la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia interpretativa. *Roldán Flores v. M. Cuebas et al., supra,* a la pág. 679. No obstante, nuestra autoridad revisora es limitada, pues solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114-155 (2015). Tal limitación responde a que carecemos de facultad para adjudicar hechos materiales en disputa, toda vez que esa tarea corresponde al foro primario. Íd.; *Vera v. Dr. Bravo,* 161 DPR 308, 335 (2004).

**B.**

El Art. 1042 del Código Civil (1930), Ley Núm. 48 de 28 de abril de 1930, según enmendada (Código Civil de 1930)[6], dispone que "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia". 31 LPRA sec. 2992. Así, pues, en nuestro ordenamiento civil, las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes

---

[6] Los hechos que nos ocupan surgieron bajo el Código Civil (1930), *supra*. Por tal razón, hacemos referencias a las disposiciones de esta legislación derogada.

contratantes, y deben cumplirse al tenor de los mismos, según preceptúa el Art. 1044 de la precitada legislación. 31 LPRA sec. 2994.

En armonía con lo anterior, el Art. 1207 del Código Civil (1930), 31 LPRA sec. 3372, establece que "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". 31 LPRA sec. 3376. Ahora bien, una obligación de naturaleza contractual adviene a la vida jurídica cuando concurren los siguientes requisitos: (1) el consentimiento de los contratantes, (2) el objeto cierto que sea materia del contrato, (3) la causa de la obligación que se establezca. 31 LPRA sec. 3391. Ello, pues, los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1213, Código Civil (1930), *supra*, 31 LPRA sec. 3391.

Cónsono con lo discutido, un reclamante puede presentar una causa de acción en cobro de dinero en contra de aquella parte que incumplió su obligación de emitir cierto pago. En tal caso, el demandante solo tiene que probar que: (1) existe una deuda válida, (2) que la misma no se ha pagado, (3) que él es el acreedor y los demandados sus deudores. *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 43 (1986). No obstante, es menester precisar que, solo la deuda vencida, líquida y exigible es reclamable por la vía judicial, según lo ha establecido el Tribunal Supremo de Puerto Rico:

> *La deuda es líquida por ser cierta y determinada, y es exigible porque puede demandarse su cumplimiento. Así que, al alegarse que la cuenta es líquida y exigible se están exponiendo hechos, a saber: que el residuo de la cuantía ha sido aceptado como correcto por el deudor y*

*que está vencida. RMCA v. Mayol Bianchi*, 208 DPR 100, 108-109 (2021); *Ramos y Otros v. Colón y Otros*, 153 DPR 534, 546 (2001); *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

## C.

El Art. 1536 del Código Civil (2020), Ley Núm. 55-2020, 31 LPRA sec. 10801, según enmendada (Código Civil del 2020), preceptúa que "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo".[7]  Ahora bien, el Art. 1204 del precitado cuerpo legal dispone que la reclamación para exigir responsabilidad extracontractual prescribe por el transcurso de (1) año, a contarse desde que el perjudicado conoce la existencia del daño y quien lo causó.  31 LPRA sec. 9496.  En consonancia con lo anterior, si el perjudicado no solicita indemnización dentro del término antes dispuesto, y tampoco produce la interrupción de este plazo, su reclamación será desestimada por tardía.  *Birriel Colón v. Econo y otro, supra*, a la pág. 94; *Vera v. Dr. Bravo, supra*, a la pág. 322.

Además de cumplir con el término prescriptivo, el reclamante debe establecer: (1) la existencia de un daño real, (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión, el cual tiene que ser culposo o negligente. *Sucn. Mena Pamias et al. v. Meléndez*, 212 DPR 758, 768 (2023); *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 483-484 (2022).  Así, pues, el deber de indemnizar presupone la existencia de un nexo causal entre el daño y el hecho que lo origina, pues solo se han de remediar aquellos daños que constituyen una

---

[7] Similarmente, el Art. 1802 del derogado Código Civil (1930), *supra*, establece que "[el] que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización". 31 LPRA sec. 5141. Conviene reiterar, que hacemos referencia a esta legislación derogada, toda vez que la parte apelante alude a hechos ocurridos bajo el Código Civil (1930), *supra*. No obstante, citamos también el Código Civil (2020), *supra*, pues la Sra. Irizarry Quintero alega la ocurrencia de unos daños suscitados en el año 2022.

consecuencia del hecho que obliga al resarcimiento. *López v. Porrata Doria,* 169 DPR 135 (2006).

**III.**

En el recurso presente, la Sra. Irizarry Quintero señala que erró el foro primario al desestimar por la vía sumaria su reclamación en torno a cobro de dinero y daños y perjuicios. En esencia, sostiene que PRERAC incurrió en cobro de lo indebido, y por ende, razona que debe restituírsele la cuantía objeto de su reclamación. Además, argumenta que, la parte apelada debe indemnizarle por los daños y perjuicios que ha experimentado desde el 4 septiembre de 2018, fecha en la cual le cursó una misiva en reclamo del pago en cuestión. A su vez, cataloga como un acto culposo y negligente la negativa de PRERAC de restituirle el dinero, de acuerdo a la comunicación electrónica recibida el 2 de junio de 2022.

Por su parte, PRERAC nos invita a confirmar el dictamen apelado por entender que es conforme a derecho. Arguye que, de acuerdo con la prueba presentada, Auto Mart fue el concesionario que se benefició del pago que motivó la presentación de este pleito. Amparado en este razonamiento, aduce que no participó de la transacción fallida entre la Sra. Irizarry Quintero y el Sr. Román Herrero. Por ende, alega que la apelante no tiene una causa de acción en cobro de dinero, ni en cobro de lo indebido.

Como cuestión principal, precisamos que nos encontramos en igual posición que el foro primario para examinar de *novo* el expediente, y evaluar si la moción de sentencia sumaria y su respectiva oposición se presentaron de conformidad con los criterios procesales. Así pues, tras revisar con detenimiento ambos escritos, resolvemos que estos exhiben íntegramente las formalidades que dimanan de la Regla 36.3 de Procedimiento Civil, *supra.*

Atendido lo anterior, nos compete resolver, en segundo lugar, si existen hechos esenciales en controversias que impidan dictar sentencia sumaria. Adelantamos que no existen hechos esenciales en controversias que imposibiliten dictar sentencia sumaria en esta etapa, y consecuentemente, resolver que PRERAC adeuda la suma de $13,000.00, tras la devolución del vehículo de motor. Por tanto, determinamos que el foro primario erró al no acoger este mecanismo procesal en aras de brindar una solución justa e inmediata a la reclamación presente. Veamos.

Surge de la prueba documental obrante en el expediente ante nos que, el Sr. Román Herrero le indicó a la Sra. Irizarry Quintero que emitiera un cheque a nombre de PRERAC, por motivos de la compraventa del automóvil Toyota Corolla (2012).[8] Según la instrucción brindada por este, la apelante expidió un cheque de $13,000.00 a la orden de PRERAC fechado el 7 de febrero de 2013.[9] No obstante, tras la adquisición del vehículo de motor, la apelante devolvió el automóvil porque no cumplió con las especificaciones acordadas en el negocio jurídico.[10] Así las cosas, el Sr. Román Herrero quedó en dialogar con el referido concesionario de vehículo de motor para la restitución del dinero.[11]

No obstante, la apelante no recibió respuesta por parte del Sr. Román Herrero ni PRERAC. Así que, el 4 de septiembre de 2018, solicitó, por conducto de su representante legal, la devolución del dinero directamente a la corporación apelada.[12] Sin embargo, PRERAC se limitó a responder que nunca ha negociado con el Sr. Román Herrero, ni le ha vendido vehículos de motor

---

[8] Véase, Entrada 16 del SUMAC TPI, Deposición Tomada a la Sra. Irizarry Quintero (Exhibit 2), a la pág. 39, líneas 1-8.

[9] Véase, Entrada 16 del SUMAC TPI, Cheque (Exhibit 6), a la pág. 1.

[10] Véase, Entrada 16 del SUMAC TPI, Deposición Tomada a la Sra. Irizarry Quintero (Exhibit 2), a la pág. 51, líneas 1-24, y a la pág. 52, líneas 1-16.

[11] Véase, Entrada 16 del SUMAC, Deposición Tomada a la Sra. Irizarry Quintero, a la pág. 27, líneas 15-21.

[12] Véase, Entrada 16 del SUMAC TPI, Carta suscrita por el licenciado Harry Olivero Llorens (Exhibit 8), a las págs. 1-2.

usados, según la carta suscrita el 30 de octubre de 2018.[13]  Por otro lado, la parte apelada ha alegado que Auto Mart de Ponce y JMO Auto Group recibieron el pago en cuestión.  Sin embargo, no nos persuade tal argumento, toda vez que no ha sido respaldado de manera adecuada mediante la prueba presentada.

Al contrario, colegimos que la Sra. Irizarry Quintero, por su parte, ha demostrado que es un hecho incontrovertido, —no refutado por la parte apelada y sustentado en evidencia documental— que PRERAC recibió, depositó y cobró el cheque de $13,000.00, expedido a su nombre.[14]  Ante tales circunstancias, determinamos que la parte apelante estableció, a tenor con la totalidad de la prueba presentada, que: (1) existe una deuda válida generada tras la devolución del automóvil en cuestión, (2) cuya cuantía no ha sido pagada, y en efecto, (3) la reclamante es la acreedora, puesto que emitió el cheque a favor PRERAC, quien es su deudor.  En vista de ello, reiteramos que no existen hechos en controversia que impidan acoger la vía sumaria para disponer que la parte apelada es responsable de restituir la suma adeudada.

Por último, la parte apelante argumenta que erró el foro primario al desestimar su causa de acción sobre daños y perjuicios. No le asiste la razón. De acuerdo con la prueba presentada, disponemos que la causa de acción en daños y perjuicios generada por el suceso del mes de febrero del 2013 prescribió por no haberse ejercitado dentro del término prescriptivo. Respecto la acción legal instada en el año 2022, advertimos que tal reclamación no exhibe los elementos esenciales de: (1) la existencia de un daño real, (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión, el cual tiene que ser culposo o negligente.  En virtud de lo anterior,

---

[13] Véase, Entrada 16 del SUMAC TPI, Carta suscrita por el licenciado Luis Llach Zúñiga (Exhibit 9), a las págs. 1-2.
[14] Véase, Entrada 16 del SUMAC TPI, Cheque (Exhibit 6), a la pág. 1.

resolvemos que el TPI actuó correctamente al desestimar por la vía sumaria la causa de acción en daños y perjuicios. Por consiguiente, confirmamos el dictamen impugnado en cuanto proceder.

Ahora bien, concluimos que el foro primario erró al desestimar la acción de cobro de dinero mediante sentencia sumaria. Por tanto, revocamos la Sentencia apelada en cuanto a este extremo. En consecuencia, disponemos que no existen hechos esenciales en controversias que impidan dictar sentencia sumaria, a los fines de establecer que PRERAC es la parte deudora de la suma ascendente a $13,000.00, reclamada por la Sra. Irizarry Quintero, quien advino a ser acreedora, tras la devolución del vehículo de motor.

## IV.

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, revocamos la Sentencia Parcial, emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, en cuanto a la desestimación de la causa de acción sobre cobro de dinero, y en consecuencia, disponemos que PRERAC Inc. es la parte deudora de la suma ascendente a $13,000.00, reclamada por la Sra. Helvia Irizarry Quintero. No obstante, confirmamos el dictamen en lo concerniente a la desestimación de la causa de acción sobre daños y perjuicios, toda vez que esta reclamación está prescrita.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones